IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES A. BUTLER                    *
              Plaintiff,
        v.                         *    CIVIL ACTION NO. WMN-04-2496

WARDEN SHEARIN, et al.             *
              Defendants.
                                   ***

## MEMORANDUM

I.    *Procedural History*

      This Complaint was filed by Plaintiff James Butler, a federal inmate, alleging that during his incarceration at the Federal Correctional Institution in Cumberland ("FCI-Cumberland")[1] he suffered harm due to environmental tobacco smoke ("ETS")[2] exposure.  Plaintiff alleges an Eighth Amendment violation and a tort claim based on negligence.  He invokes this Court's civil rights jurisdiction under 28 U.S.C. § 1343, as well as its "supplemental jurisdiction" under 28 U.S.C. § 1367 of the Federal Tort Claims Act ("FTCA").

      Plaintiff alleges that during his confinement at FCI-Cumberland from 1997 to 2003, he was housed in two units where smoking was allowed until February 3, 2003.  He claims that pursuant to Warden Shearin's memorandum, effective February 3, 2003, smoking was only to be permitted in outside areas.  Plaintiff asserts, however, that since February 3, 2003, non-smokers are celled with smokers and smokers continue to smoke in FCI-Cumberland cells, television and laundry rooms, common areas, shower stalls, telephone areas, chow and pill lines, and inside recreation areas and the dining hall.

---

[1]    Plaintiff was transferred to the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield") in May  of 2005.  *See Butler v. Dewalt*, Civil Action No. WMN-05-1214.

[2]    ETS is commonly called secondhand smoke.

Plaintiff complains that: (i) he has been housed with cellmates who smoke in their cells; (ii) he has been exposed to very high levels of ETS; (iii) he has suffered from symptoms of chest pain, sore throat, burning eyes, and headaches caused by ETS; and (iv) FCI-Cumberland administrators, officers, and medical personnel are unwilling to enforce the February, 2003 non-smoking policy and have frequently violated the policy themselves.  He maintains that he has heart problems, high blood pressure, and spondylolisthesis,[3] which is exacerbated by his exposure to ETS.  Plaintiff claims that he has submitted numerous administrative remedies about inmates and staff smoking in the FCI-Cumberland units and alleges that he has been subject to a variety of abuses in retaliation for filing administrative remedies.  Plaintiff sues approximately 25 prison employees and seeks declaratory and injunctive relief, along with compensatory and punitive damages.[4]

On August 16, 2005, the Court granted Defendants' Motion to Dismiss in part and dismissed Plaintiff's FTCA claims for the failure to exhaust.  Defendants' Motion to Dismiss or for Summary Judgment was, however, denied without prejudice as to Plaintiff's civil rights claim.  Defendants were afforded the opportunity to renew their dispositive motion in order to respond to the particularized claims raised by Plaintiff in his Opposition[5] and to discuss the implications of the

---

[3]     Spondylolisthesis is the forward movement of the body of one of the lower lumbar vertebrae, on the vertebra below it, or upon the sacrum.  *See* Stedman's Medical Dictionary, P. 1656, 26th Ed. 1995.

[4]     With his transfer out of FCI-Cumberland, Plaintiff's injunctive relief request has been rendered moot.

[5]     Plaintiff raised a number of specific claims in his Opposition, supported by affidavit,  which were not previously presented.  He asserted that he was housed in a general population cell with a cell mate, Ronald Lett, who smoked packs of cigarettes  in the cell.  He again maintained that his cardiovascular and other medical conditions were compromised by ETS.

circuit court decision in *Manning v. Lambert*, 2005 WL 1689633 (4th Cir. July 20, 2005) with regard to this case.[6]

Defendants have filed a Renewed Motion to Dismiss or for Summary Judgment.  Paper No. 28.  Subsequent to his filing extensions of time and an interlocutory appeal, Plaintiff submitted his Opposition.[7]  Paper No. 44.  After review, this Court finds that an oral hearing is not necessary to the disposition of this case.  *See* Local Rule 105.6. (D. Md. 2004).

II.  *Standard of Review*

A.  *Motion to Dismiss*

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events.  *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

---

[6]    Defendants' initial dispositive motion relied on this Court's unpublished opinion in *Manning* to support their *Bivens* arguments.  *See Manning v. Lambert, et al.*, Civil Action No. AW-03-2057 (D. Md. 2003). The Fourth Circuit, however, reversed and remanded *Manning*, finding material issues of fact regarding: Manning's exposure to high levels of ETS at FCI-Cumberland; the seriousness of Manning's injury or medical need; and the diligence with which FCI-Cumberland staff enforced the non-smoking policy.

[7]    The interlocutory appeal was dismissed on March 22, 2006.

B.  *Motion for Summary Judgment*

Fed. R. Civ. P. 56(c) provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

4

For the reasons that follow, the Defendants' Renewed Motion to Dismiss or for Summary Judgment will be granted on all civil rights claims raised in the action.

III. *Analysis*

Plaintiff alleges that his exposure to ETS violates his Eighth Amendment right to be free from cruel and unusual punishment.[8]  As a federal prisoner, Plaintiff asserts these claims pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

In order to show that exposure to ETS constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, a prisoner must show that prison officials "have, with deliberate indifference,[9] exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."[10]  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

---

[8]     Retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983.  *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86 (4th Cir. 1993).  The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'"  *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).  The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.  *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Plaintiff raises a conclusory claim of retaliation for his administrative complaints concerning alleged violations of the non-smoking policy.  Under the law, he has failed to set out any factual or legal support for such a claim.

[9]     The Supreme Court, in *Farmer v. Brennan*, 511 U.S. 825 (1994), described the standard for determining deliberate indifference as follows:   [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.* at 837.  Thus, to succeed on such a claim, the prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) that the defendant actually drew this inference; and (4) that the defendant deliberately disregarded the apparent risk.  *Id.*

[10]     Coinciding with this analysis is an examination of Plaintiff's medical condition to determine whether he has an objectively serious medical problem which, if exposed to levels of ETS, poses a risk of serious injury.  *See Helling v. McKinney*, 509 U.S. at 34-35; *see also Atkinson v. Taylor*, 316 F.3d 257, 273-74 (3rd

> [D]etermining whether [Plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS.  It also requires a court to assess *whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk*.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id*. at 36 (emphasis supplied).  The existence of a policy regarding permissible and non-permissible smoking within the institution is evidence that the defendants have not been deliberately indifferent to the harms posed by ETS.  *See Jordan v. New Jersey Department of Corrections*, 881 F. Supp. 947, 952 (D. N.J. 1995) (adoption of no smoking policy indicates defendants were not deliberately indifferent).   Further, good faith enforcement of those policies by prison officials is evidence that the Eighth Amendment has not been encroached.  *See Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (allegations that prison officials consistently unwilling to enforce smoking ban constituted deliberate indifference).   Plaintiff is not guaranteed a smoke-free environment during his term of confinement.  Rather, only exposure to ETS at levels so high that no one would willingly subject themselves to it is prohibited by Eighth Amendment considerations.  *See Helling*, 509 U.S. at 36.   In their Renewed Motion to Dismiss or for Summary Judgment, Defendants seek dismissal of the remaining *Bivens* claim.  They argue that while Plaintiff has alluded to instances in which Defendants failed to enforce the FCI-Cumberland non-smoking policy and have themselves violated policy, he has failed to satisfy the objective component of an Eighth Amendment violation by: (i) providing any scientific or statistical evidence of unreasonable levels of ETS; (ii) establishing by any method that *he himself* has been exposed to *unreasonable* levels of ETS; and (iii) demonstrating

---

Cir. 2003); *Henderson v. Sheahan,* 196 F.3d 839, 846-47 (7th Cir. 2000).

how particular technical violations of the non-smoking policy directly impacted on him. Defendants observe that a large number of the instances in which Plaintiff raises claims of policy violations allegedly occurred in outdoor or indoor common areas, and that: (i) Plaintiff did not work in these areas, *e.g.* the loading dock;[11] and (ii) Plaintiff has failed to show how situations in which he simply observed alleged violations of the smoking policy, *e.g.*, tobacco smells, collection of cigar and cigarette butts, and/or potential cigarette fire, unreasonably exposed him to ETS.

Defendants argue that the only allegations that "could even arguably lead to constitutionally-significant ETS exposure for Plaintiff concerns the smoking habits of his cell-mates." They assert, however, that while Plaintiff revised his allegations to claim that he was forced to live with cellmates that have been heavy smokers in cells during prison lock-downs, he has failed to exhaust his administrative remedies as to cellmate smokers. Defendants further assert that even if these allegations were properly exhausted, Plaintiff has failed to adduce evidence that he was subjected to unreasonable amounts of ETS beyond his "own generalized self-serving statements of a three-year history of smoking cell-mates."

Defendants further assert that Plaintiff has failed to demonstrate a violation of the subjective component of an Eighth Amendment violation because he has not adduced record evidence proving that Defendants displayed the requisite state of mind deliberate indifference to a serious injury or medical need that would support his Eighth Amendment claim.[12] They state that they have provided evidence demonstrating that they have attempted to enforce the non-smoking policy by dealing with

---

[11]    Plaintiff's opposition also alleged that he observed smoking in common areas and the television room of FCI-Cumberland.

[12]    Defendants argue that Plaintiff has failed to report the specific details of most of the violations of the smoking policy he observed.

violators and that Plaintiff's evidence that a few inmates and even staff may have violated the policy without sanction reflects no more than "imperfect or negligent enforcement of the policy, which is plainly insufficient to establish deliberate indifference in this context."  Defendants further assert that FCI-Cumberland staff did not ignore and indeed did respond to Plaintiff's administrative complaints regarding alleged staff violations of the non-smoking policy by repeatedly meeting with him and conducting educational sessions with FCI-Cumberland staff.  They maintain that Plaintiff was provided medical care for any medical complaints and there is no credible medical evidence to suggest that his health problems were aggravated by his alleged exposure to ETS.  Defendants also assert that with respect to Plaintiff's claim that he shared a cell with smokers, he never brought his concerns to the attention of FCI-Cumberland staff while the alleged incidents were occurring.

Finally, Defendants argue that the Fourth Circuit decision in *Manning* has no direct bearing upon the analysis of this case in that the "nature and quantity of the material evidence in this case demonstrates that Plaintiff cannot establish a constitutional violation...."

In response, Plaintiff maintains that he suffered harm from ETS while confined at FCI-Cumberland.  He claims that his pre-existing medical conditions, *e.g.*, liver inflammation, Hepatitis C ("HCV"), heart problems, hypertension, chest pains, and sponglitis [sic] have been aggravated due to exposure to ETS by inmates smoking in cells, television rooms, laundry rooms, and common areas.  In addition to discussing former cellmate Ronald Lett, Plaintiff now states that other unidentified cellmates were smokers.  He provides affidavits from inmates who attest that while: (i) on duty as an FCI-Cumberland compound orderly, cigarette butts were found on and near the sidewalks within the compound; (ii) visiting Plaintiff's cell in FCI-Cumberland Housing Unit A-202 tobacco smoke was smelled and dark stains were observed on the walls and ceilings; and (iii) housed

8

at FCI-Cumberland, staff and inmates were seen smoking in restricted areas, the back loading dock, and inside buildings.   Plaintiff indicates that he grieved general complaints about FCI-Cumberland inmates and personnel violating the non-smoking policy, but staff declined to discipline inmates and staff.[13]

The U.S. Bureau of Prisons ("BOP") has promulgated rules regarding smoking within its facilities pursuant to 18 U.S.C. § 4042(a)(2).   Beginning in July, 1994, the BOP issued Program Statements ("P.S.") to advance towards becoming a clean air environment and to restrict areas and circumstances where smoking is permitted.   At that time, all of the federal prison facilities were designated as non-smoking unless a warden of the facility specifically designates an area as a smoking area.   *Id.*, *see* 28 C.F.R. § 551.161.   The warden was to be responsible for identifying and designating outdoor areas as smoking areas and was permitted to designate indoor locations where prisoners and employees were permitted to smoke.   *Id.*, *see* 28 C.F.R. § 551.163.   These areas were to be clearly identified by the appropriate placement of signs.   *Id. see*  28 C.F.R. § 551.164.   Indoor smoking areas were to be well ventilated to the outside, but smoking was not permitted in elevators, storage rooms, warehouses, libraries, vehicles, dining facilities, kitchen and food preparation areas, medical and dental care delivery areas, government and institutional vehicles, administrative areas and offices, auditoriums, classrooms, conference rooms, gyms, exercise rooms, restrooms and areas containing computer equipment.   *Id.*

---

[13]    Plaintiff seemingly acknowledges that he did not raise formal or informal complaints about alleged smoking in his cell because of his fear of retaliation from his younger "Generation-X" cellmates. He presents a copy of a request he sent to staff on or about May 18, 2004, where he asks for an investigation to "see if the odor in cell 202 is a tobacco smell....other inmates have informed me that when I am out of the cell, several inmates get together and smoke in the cell."

Pursuant to these regulations, FCI-Cumberland developed an Institution Supplement ("I.S.") setting forth restrictions on smoking and designating areas within the Institution where smoking by inmates and staff would be permitted.  The first policy, which went into effect on June 9, 1995, permitted inmates to smoke: in general population cells that were designated smoking areas by the Unit Manager, provided the cell door was closed; outdoors on the concrete concourse in the middle of the compound; and in other designated outdoor areas where ash receptacles were provided.  *Id*. Smoking in general population cells was permitted at FCI-Cumberland because the ventilation systems in the buildings lead directly outside and did not move air from cell to cell.  The I.S. policy was supplemented on September 27, 2002, to prohibit smoking in the visiting rooms, the outdoor visiting area,  near entry ways to any buildings, and at the commissary entrance.  In addition the revised policy required outdoor smoking areas be a minimum of 20 feet away from entrance doors and combustible sources and it prohibited the carrying of lit tobacco products from one area to another.  Staff and inmates were instructed to remain in the designated smoking area while smoking; inmates were, however, permitted to smoke in cells designated by the Unit Manager, provided the cell door was closed.

The policy was again supplemented on February 3, 2003, to prohibit all smoking inside general population cells.  On March 15, 2004, the BOP issued P.S. 1640.04, which effectively designated all BOP facilities, with the exception of staff residences, to be regarded as free of second-hand smoke, except for perimeter patrol vehicles and towers occupied by one person.  Outdoor smoking areas are to be designated by the Warden.  Inmates violating the smoking rules were subject

10

to disciplinary action.[14]   The record shows that a number of FCI-Cumberland inmates were sanctioned for violating the current smoking policy.

Upon further review of Plaintiff's allegations, the Court finds that his *Bivens* claim falls short of an Eighth Amendment violation.   Even if Plaintiff's allegations are true and that he found evidence indicative of FCI-Cumberland inmates and staff smoking in unauthorized areas such as the television rooms, pill lines, shower areas, compounds, and loading dock, there was no requirement that Plaintiff remain in those areas.   In such instances, Plaintiff was not exposed to ETS that he could not escape.[15]

The focus of this Court's review concerns Plaintiff's claim that he was celled with inmates who smoked and that when FCI-Cumberland was on lock-down he was forced to endure direct exposure to ETS.   The non-smoking plaintiff in *Helling* was forced to share a prison cell with an inmate who smoked five packs of cigarettes a day.   The policy in place at FCI-Cumberland permitting inmates to smoke in their cells if the door was closed was changed to the current rule prohibiting all smoking inside of any buildings within the prison complex.   During the relevant time period in question Plaintiff was housed in FCI-Cumberland Unit A-1.[16]   Plaintiff specifically points to a period of time where he was housed with an inmate, Ronald Lett, and alleges that Lett had a nicotine addiction and had no choice but to "smoke in the cell at night."   Records show that Lett

---

[14]     The P.S. provides for smoking cessation and nicotine replacement therapy programs.

[15]     Any exposure to ETS in the compound and loading dock as described by Plaintiff  is not the type of high risk exposure contemplated by the Supreme Court in *Helling*.   Contemporary standards of decency are not violated where Plaintiff is fortuitously and briefly exposed to ETS while walking by a smoker who is outside.

[16]     From November 17, 2003, until his transfer out of FCI-Cumberland on May 2, 2005, Plaintiff was assigned to housing Unit A-1, Cell 202, lower bunk.

was indeed celled with Plaintiff from May 6, 2004, to July 19, 2004.[17]   Based upon the verified

materials, however, there is no demonstration that Plaintiff specifically notified Defendants that Lett

or any other FCI-Cumberland cell-mate was violating non-smoking policy or that he even, at a

minimum, sought a cell change.[18]   Additionally, Plaintiff has not alleged any willful conduct by

Defendants with regard to enforcement of the policy.   In fact there is nothing alleged in the

Complaint that resembles intentional conduct or deliberate indifference.  Plaintiff does not deny that

prison staff have responded to his complaints by advising him that he should report particular

incidences of the smoking policy violations at the time they occur.[19]

In any event, there is no evidence that the exposure to ETS at FCI-Cumberland described by

Plaintiff approached a level that could be described as dangerous to his health.  *See Larson v.*

*Kempker*, 414 F.3d 936, 940 (8th Cir. 2005) (inmate's failure to put forth objective evidence that the

was subjected to unreasonably high levels of ETS).   Plaintiff arrived at FCI-Cumberland in 1997.

The BOP medical record, commencing in 1997, show he has a documented history of hypertension,

HCV, and chronic lower back pain.  The medical records and declarations provided to the Court

---

[17]     Plaintiff filed this Complaint in July of 2004.  He did not raise his particularized claim concerning
cellmate Lett until the filing of his opposition in October of 2005.

[18]     Plaintiff's exhibits reveal that in 2004, FCI-Cumberland administrators received a grievance from
Plaintiff complaining that a Housing Unit A-1 counselor had confronted Plaintiff's cellmate about smoking
in the cell and that this caused a confrontation between Plaintiff and his cellmate.   The counselor
acknowledged that he had confronted Plaintiff's cellmate about violating the non-smoking policy.

[19]     That Plaintiff alleges that Defendants failed to enforce each and every non-smoking policy violation
he allegedly witnessed states no more than imperfect enforcement of the non-smoking policy which does not
comprise a violation under the subjective element of an Eighth Amendment analysis.  *See Scott v. District
of Columbia*, 139 F.3d 940, 944 (D.C. Cir. 1998).  Plaintiff resided in a prison where  institutional rules of
varying degrees of severity are routinely violated.  Failure by prison officials to prosecute every transgression
committed by prisoners, however, simply does not violate the Eighth Amendment.

show that in 2003 and 2004,[20] Plaintiff reported to the FCI-Cumberland healthcare department with complaints of symptoms, *e.g.* chest pain and shortness of breath, that he subjectively attributed to exposure to ETS.[21]   Each examination, however showed no abnormalities or any issues that could be associated with ETS.[22]   Further, when advised to submit to testing to investigate the nature of his chest pains, *e.g.*, a nuclear stress test, Plaintiff repeatedly refused such testing.

Plaintiff's claims against the medical care providers in this case arise from allegations that they refused to protect him from ETS.   It is unclear from the Complaint whether Plaintiff is attempting to assert an Eighth Amendment claim against these particular defendants or if his only claim against them is for negligence.   In either event, this claim can not be pursued as a *Bivens* claim because it is prohibited by the provisions in 28 U.S.C. § 233(a).[23]   Notwithstanding that

---

[20]     Plaintiff alleges that in 2002, he complained to the Health Services Administrator about staff smoking in unauthorized areas.   The medical record shows that in July, 2002, when the non-smoking policy was being implemented, he complained about staff violating the policy, was interviewed by a health care administrator, and was asked to inform personnel if the smoking violations continued.

[21]     There is no demonstration that Plaintiff sought medical care for alleged ETS-related symptoms during the two month period of time he was housed with Ronald Lett.

[22]     Plaintiff claims that he suffered bronchitis in 2002.   The medical record does show that Plaintiff was diagnosed with acute bronchitis on May 15, 2002, and was given antibiotics and pain medication.   Two days later, on May 17, 2002, he indicated that he felt better.   His lungs were found to be clear and his oxygen saturation level was at 98%.   Plaintiff also claims that while housed at FCI-Edgefield he was diagnosed with colitis in September of 2005.   Plaintiff, however, puts forth no objective evidence showing that the bronchitis or colitis was caused by or exacerbated by ETS exposure.

[23] 28 U.S.C. § 233 (a) provides, in relevant part, that:

     The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

consideration, Plaintiff has failed to establish that he has a serious medical need which requires him to be housed in an absolutely smoke-free environment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (to state a constitutional claim for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to a serious medical need). While he complains of symptoms that he attributes to exposure to ETS, all medical examinations performed reveal no condition, respiratory or otherwise, that required Plaintiff to be insulated from ETS at all times.  Absent any real medical need for the requested medical care, this Court can find no basis to sustain a claim of medical malpractice based upon the facts asserted by Plaintiff. [24]  A medical care provider is not negligent where there is a refusal to provide medical care that is unwarranted by any objectively discernible physical or medical condition.

IV. *Conclusion*

Plaintiff has failed to come forward with evidence demonstrating that Defendants wilfully disregarded his complaints concerning violations of the non-smoking policy and ETS and were deliberately indifferent to a serious medical need.  Accordingly, their Renewed Motion to Dismiss or for Summary Judgment is hereby granted.  A separate Order follows.

/s/

Date: August 29, 2006                  William M. Nickerson
                                       Senior United States District Judge

---

[24]   "The general rule in negligence cases, including medical negligence cases, is that the plaintiff has the burden of proving negligence, the existence of an injury, and that the injury was caused by the negligence."  *Mayer v. North Arundel Hospital Association, Inc.*, 145 Md.App. 235, 245  802 A.2d 483, 489 (2002).

14